The State ex rel. Wisconsin Telephone Co. vs. Janesville Street R. Co.

THE STATE EX REL. WISCONSIN TELEPHONE COMPANY, Appellant, vs. JANESVILLE STREET RAILWAY COMPANY, Respondent.

*January 15 — January 30, 1894.*

*Municipal corporations: Regulation of electric wires: Safeguards at crossings: Ordinance held applicable to existing crossings: Guard wires over trolley of street railway company: Mandamus on relation of telephone company.*

1. An ordinance regulating the stringing of wires in a city, and providing that " whenever it shall be necessary to cross the line of any existing electric light, electric power, telegraph, or telephone line or lines . . . the person or company making such crossing shall supply all necessary safeguards for the same," is *held* reasonable and a valid exercise of police power.

2. Such ordinance requires safeguards to be supplied for crossings existing at the time of its passage, but is not for that reason retroactive or invalid.

3. The relation of a telephone company for a writ of *mandamus* to compel a street railway company to place guard wires above its trolley wires at points where the latter crossed the telephone lines, stated that the relator had constructed and operated its lines with the permission,. consent, and approval of the city, and had an established business; that defendant afterwards erected its poles and wires in streets already occupied by the relator; that the relator's wires are liable to break and fall, and that this cannot be prevented; that when they do fall they make direct crosses with defendant's wires, and the dangerous high-tension currents used by defendant pass over the relator's wires and destroy its instruments and other property, injure its business, endanger the health of its employees and others, and are liable to set fires in the city; that guard wires placed above defendant's trolley wires are the approved method of preventing the threatened mischief; and that defendant is required by an ordinance to supply the necessary safeguards, but has failed to do so. *Held*, on demurrer, that the facts stated are sufficient to entitle the relator to the writ.

APPEAL from the Circuit Court for *Rock* County.

*Mandamus* to compel the defendant to construct and maintain a guard wire above its trolley wires at certain points in the city of Janesville. The facts stated in the

relation will sufficiently appear from the opinion. The appeal is from an order sustaining a demurrer to the relation and quashing the alternative writ.

Sec. 7 of the ordinance of the city of Janesville, dated October 10, 1892, and entitled " An ordinance to regulate the stringing of wires in the city of Janesville," is as foi lows: " Whenever it shall be necessary to cross the line of any existing electric light, electric power, telegraph, or telephone line or lines, or any wires used for the purpose of transmitting electric energy, it shall be at a distance of not less than three feet therefrom; and the person or company making such crossing shall supply all necessary safeguards for the same, except that wherever the wires of any telegraph, telephone, or fire alarm or police system shall cross the wires of any electric light or power system, or any wires used for the transmission of electric energy, the person or company owning or operating such electric light or electric power system or such wires used for the transmission of electric energy shall provide all necessary safeguards at such crossing."     Sec. 32 provides that " any person, company, or corporation that shall violate any of the conditions of this ordinance, or refuse to make such alterations and repairs in their present or future constructions as may be deemed in conformity with the provisions of this ordinance, shall pay a penalty of not more than one hundred dollars nor less than five dollars."

For the appellant there were briefs by *Miller, Noyes & Miller*, attorneys, and *Fethers, Jeffris & Fifield*, of counsel, and the cause was argued orally by *Geo. H. Noyes* and *Ogden H. Fethers*.

For the respondent there was a brief by *Jackson & Jackson*, and oral argument by *A. A. Jackson*.

ORTON, C. J.   This is an appeal from an order of the circuit court sustaining the demurrer of the respondent to

The State ex rel. Wisconsin Telephone Co. vs. Janesville Street R. Co.

the relation of the appellant, and quashing the alternative writ of *mandamus.* The material facts set out in the relation are briefly as follows:

The relator, the telephone company, obtained its right from the state to do business in the city of Janesville, and to erect and maintain poles, cross-arms, and wires over and through the streets, ways, and alleys of said city, and operated telephone wires and erected poles in the streets, ways, and alleys, with the permission, consent, and approval of said city, from 1879 until the present time, at a great expense, and has now 151 telephones in said city and suburbs. The main trunk lines of the poles and wires have been and are now maintained upon East, Main and Milwaukee streets. All the rights, right of way, and easements that it had previously enjoyed as a telephone company were confirmed by an ordinance of said city, dated October 10, 1892, a copy of which is attached hereto and marked "Exhibit 1," and the company has since exercised and enjoyed the same, and all the said lines and poles have been where they are now for years, with a few exceptions, and where they should be. The relator has complied with the statutes of the state, and paid its license fee, and has a license to do business as a telephone company. The defendant is a corporation by the laws of the state, and obtained its rights to operate a street railway in said city by horse power by ordinances of said city, dated October 8 and November 25, 1885, and operated the same on the same streets upon which the relator had its poles and wires, among others East, Main, and Milwaukee streets. By an ordinance of the city, dated December 15, 1891, the former ordinances were so amended as to give the defendant the right to use "electrical power" in operating its street railway, and on a single or double track, with all necessary curves, turnouts, switches, poles, brackets, and wires. The defendant has erected its poles, wires, and overhead wires

The State ex rel. Wisconsin Telephone Co. vs. Janesville Street R. Co.

over and above the streets already occupied by the relator in the manner aforesaid, and, among others, East, Main, and Milwaukee streets, in said city. The defendant company is compelled to use very strong conductors of electricity to run its cars, and it uses main and trolley wires, which are not insulated, while the wires of the relator are insulated, and, though good and sufficient, can only use feeble and delicate currents of electricity in telephoning. The currents used by the defendant are exceedingly dangerous to property and persons, by setting fire to buildings, and by injuring persons coming in contact therewith. The poles of the relator are liable to break, and the wires to break and fall, by the force of storms, and this cannot be prevented; and when the wires do fall they make direct crosses with the wires of the defendant, and the high-tension currents of electricity used by the defendant pass in the wires of the relator, and destroy its instruments and other property, and endanger the health of its employees and others, and are liable to set fires in the city. If the defendant had constructed its railway system properly, it would have placed "guard wires" at not less than four feet above its trolley wires, and in that manner prevented such serious consequences by restraining and carrying off the high-tension currents safely. Such guard wires, so placed and maintained, are the approved method of avoiding or preventing the threatened mischief. The defendant is required to apply such safeguards by an ordinance of the city, dated October 10, 1892. The relator has complied with said ordinance, and the defendant has failed to do so. This is the substance of the relation.

We are of the opinion that the facts set out in the relation are sufficient to entitle the relator company to the remedy asked for: (1) The telephone company occupied the streets of the city with its poles and wires, and was in the safe and successful prosecution of its business, under

the authority of law and "by the permission, consent, and approval" of the city of Janesville. (2) The defendant company afterwards sets its poles and extends its wires along the same streets, so that its lines frequently cross the lines of the relator, and in such near contact as to endanger the persons in its employment, and its property, and threaten the destruction of its business. Has the defendant the right to do this, if it is in its power to prevent the threatened mischief? By the common maxim that one person has no right to use his own to the injury of another, and by the common principles of elementary law, it would seem that it had not. The defendant has intruded upon the established business of the relator in such way as to endanger it and the persons engaged in it, when, by the adoption of such a simple safeguard and the only practicable one, such danger can be avoided and the business of both subsist together. Ought not the defendant to be compelled to adopt such safeguard? These facts are admitted by the demurrer. The learned counsel of the respondent insists that the relator had not such priority of its business by any right. It is averred in the relation that it was established according to law and prosecuted " by the permission, consent, and approval" of the city. That would clearly give the relator a right, and that right and its enjoyment were prior to any right of the defendant. The relator's wires are up in the streets, bearing sufficient electrical power to make telephonic communications, and the defendant crosses them in many places with its wires, bearing electrical power sufficient to propel the cars upon its street railway, and the first storm that comes may blow down the poles and wires of the relator, and its wires come in contact with the wires of the defendant, where they cross each other, and become charged with its dangerous currents of electricity, set fire to the buildings in which the telephone instruments are used, and injure other property

and the persons employed in the "Exchange" and other places, so as to endanger or destroy the business of the relator. Ought not the defendant to be compelled to adopt the above safeguards to prevent this threatened mischief, or to withdraw its lines from the vicinity of the relator's wires? The company that caused the mischief ought to repair it.

Sec. 7 of the ordinance of the city dated October 10, 1892, imposes this duty upon the company using this "electrical power system" in all cases, and requires it to apply such safeguards under a penalty. But much more is it the duty of such company when it is an intruder upon the already established business of another company. The electric force is the most powerful and dangerous agency of nature, and, even when restrained or controlled by the most perfect machinery and appliances, its high-tension currents are extremely dangerous in many directions. If a municipal corporation has not the inherent provisional or police power to pass ordinances to regulate or restrain the use of such a dangerous agency within the corporate limits, it certainly cannot have such power for any purpose.

It is claimed that said ordinance has only *future* operation or effect. In application to the case, sec. 7 of said ordinance provided: "Whenever it shall be necessary to cross . . . telephone line or lines or any wires used," etc. Has it not been necessary for the defendant company to cross these telephone lines or wires of the relator since the passage of the ordinance, and is it not now necessary to do so? Then the ordinance, by its terms, is applicable to this case. The ordinance is made to regulate existing things, and things which continue to exist, as the wires of the defendant cross the wires of the relator. Whenever, at any time, wires so cross, this safeguard must be applied. The ordinance has a present and future effect. It is said these wires crossed before the ordinance was passed. That is

true, and they have continued to cross ever since, in violation of the ordinance. The ordinance does not *prohibit* the crossing of such wires. It provides the remedy for it as an existing evil, and requires safeguards to be so placed as to avoid the danger to persons and property. It is not *retroactive* in any sense.

*First.* The ordinance is reasonable, because it requires that to be done which in law and good conscience the defendant ought to do for the protection of the relator, whose established business it has endangered and disturbed. *Second.* It is clearly sustained under the police power of the city. "The test is whether it is designed and tends to protect some public or private right from the injurious act of the company; as when it prohibits the running of the cars of one company on any street so near the depot of another railroad as to interfere with safe and convenient access to the latter road." Tied. Lim. 597–599. The statute of New York, requiring telegraph, telephone, and electric wires to be placed underground in streets in certain cities (ch. 499, Laws of 1885), was upheld in *People ex rel. N. Y. E. L. Co. v. Squire,* 107 N. Y. 593; *Western Union Tel. Co. v. New York,* 38 Fed. Rep. 552. The right and authority in a city "to regulate, control, and prohibit the location, laying, use, and management of telegraph, telephone, and electric light and power '*wires and poles,*' . . . in order to guard and secure the public safety and convenience," is upheld in *Wisconsin Tel. Co. v. Oshkosh,* 62 Wis. 32. Ordinance to regulate street railways is upheld in *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, and in *State ex rel. C. C. R. Co. v. Hilbert,* 72 Wis. 184. Cities can regulate the placing of electric wires in the streets. Keasbey, Electric Wires, 38; *Van Hook v. Selma,* 70 Ala. 361; *Mutual Union Tel. Co. v. Chicago,* 16 Fed. Rep. 309; *Delaware, L. & W. R. Co. v. East Orange,* 41 N. J. Law, 127; *Western Union Tel. Co. v. Philadelphia,* (Pa. Sup.) 12 Atl. Rep. 144; *American*

*Union Tel. Co. v. Harrison*, 31 N. J. Eq. 627; *Toledo, W. & W. R. Co. v. Jacksonville*, 67 Ill. 37; *Sioux City St. R. Co. v. Sioux City*, 138 U. S. 98. There can be no question at this late day but that our municipal corporations may make all reasonable regulations for the location and use of electric wires in the street, and require all reasonable safeguards for the same. The question is virtually so settled in this state by our own decisions.

The relator is entitled to sue out the writ of *mandamus* to compel the defendant to properly place such guard wires as the proper safeguard in such a case to protect its rights and safety. The relator is especially interested in the defendant's performance of this public duty. It is admitted to be true that such guard wires so placed are the very best and most approved method of safeguard in such case. This, then, is a clear legal right to be enforced by *mandamus*. *Marbury v. Madison*, 1 Cranch, 137; *Union Pac. R. Co. v. Hall*, 91 U. S. 343; *People ex rel. Hunt v. C. & A. R. Co.* 130 Ill. 175. There is no adequate remedy in such a case, except by the writ of *mandamus*, to compel the respondent company to do what it is clearly right for it to do, and that the relator has the right to compel it to do. The penalty enforced would not cure the mischief. *Rex v. Barker*, 3 Burrows, 1266; Scott & J. Tel. § 78; High, Extr. Leg. Rem. § 320; *People ex rel. Kimball v. B. & A. R. Co.* 70 N. Y. 569; *Haines v. People*, 19 Ill. App. 354; *People ex rel. Bloomington v. C. & A. R. Co.* 67 Ill. 118; *Ohio & M. R. Co. v. People*, 121 Ill. 483; *Indianapolis & C. R. Co. v. State*, 37 Ind. 489; *State ex rel. Winterburg v. Demaree*, 80 Ind. 519; *Uniontown v. Comm.* 34 Pa. St. 293; *Howe v. Commissioners*, 47 Pa. St. 361; *Queen v. Trustees Luton Roads*, 1 Q. B. (Adol. & E. N. S.), 860; *Cambridge v. C. B. R. Co.* 7 Met. 70; *Railroad Comm'rs v. P. & O. C. R. Co.* 63 Me. 269; *State ex rel. Blake v. N. E. R. Co.* 9 Rich. Law, 247; *State v. H. & N. H. R. Co.* 29 Conn. 538; *State*

*ex rel. Van Vliet v. Wilson,* 17 Wis. 687; *State ex rel. Treat v. Richter,* 37 Wis. 275; *State ex rel. Neaves v. Wood Co.* 41 Wis. 28; *State ex rel. Grady v. C., M. & N. R. Co.* 79 Wis. 259; *Overseers of Porter Tp. v. Overseers of Jersey Shore,* 82 Pa. St. 275.

It is said that no such damages have yet accrued. The relation very clearly shows that such damage is imminent and threatening, and the danger is all the time present. This might be sufficient ground for an injunction to restrain the defendant from crossing the wires of the relator with its wires,— a much more violent remedy. The relator does not seek to prohibit such crosses, but only to make them safe. The relator is conducting its telephone business under constant fear and apprehension. Must it wait until the full extent of the apprehended consequences have been realized? The remedy sought is clearly the proper one. The demurrer of the respondent to the relation, and the motion to quash the writ, should have been overruled.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with direction to overrule the demurrer and the motion to quash the writ, and for further proceedings according to law.