Block, Respondent, vs. Milwaukee Street Railway Company, Appellant.

*January 9 — February 5, 1895.*

*Street railways: Electricity: Guard wire over trolley: Falling telephone wire: Injury to traveler on street: Negligence: Proximate cause: Court and jury: Instructions: Evidence: Physicians and surgeons: Damages.*

1. In an action for personal injuries it was not error to permit a physician, who was first consulted a year and a half after the accident, to describe the condition in which he found the plaintiff, giving subjective as well as objective symptoms, where he was consulted for advice and treatment and not for the purpose of making him a witness.

2. Plaintiff's theory being that his condition was caused by his coming in contact with a wire charged with electricity, and there being some evidence to support that theory, it was not error to permit the physician to testify that plaintiff's condition as he found it might have been so produced.

3. The testimony of one who was present at the time of the accident that he received a shock was competent as tending to show that the wire in question was charged with electricity.

4. Damages as for a permanent injury should not be allowed unless the permanency thereof is *reasonably certain* from the evidence, and the jury should be so instructed; but it was not error to admit a physician's opinion that it was *reasonably probable* that there would be no complete recovery.

5. Whether a street railway company was negligent in omitting to place guard wires over its trolley wires in such a way as to prevent telephone wires, in case of their falling, from coming in contact with the trolley wires, was a question of fact for the jury.

| 89 | 371 |
| 91 | 195 |
| 91 | 368 |
| 89 | 371 |
| 92 | 61 |
| 92 | 615 |
| 92 | 646 |
| 89 | 371 |
| 93 | 483 |
| 89 | 371 |
| 94 | 551 |
| 89 | 371 |
| 96 | 147 |
| 96 | 356 |
| 97 | 286 |
| 89 | 371 |
| 99 | 465 |
| 89 | 371 |
| 103 | 330 |
| 89 | 371 |
| 110 | 4163 |
| 89 | 371 |
| s27 LRA | 365 |
| 57 LRA | 908 |

Block vs. Milwaukee Street R. Co.

6. Whether the omission to place such guard wires, if negligence, was the proximate cause of an injury to a person coming in contact with a telephone wire which had fallen upon the trolley wire, was also a question of fact for the jury.

7. In such a case a long and copious charge to the jury upon the uses and purposes of highways and the rights of travelers to free and unobstructed passage therein, is criticised as tending to obscure the real point in controversy.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

This is an action to recover for personal injuries which the plaintiff claims that he received by accidental contact with a telephone wire which had fallen upon the defendant's trolley wire and so become heavily charged with electricity. The negligence imputed to the defendant is its omission to place guard wires over its trolley wires, so as to prevent the telephone wire from coming in contact with them.

The defendant owns and operates an electric railway along Third street in the city of Milwaukee. Third street runs north and south. Green Bay avenue crosses Third street at an acute angle, running northwest and southeast. The tracks of the defendant's road extend northerly on Third street to a point north of its intersection with Green Bay avenue. On the east side of Third street, opposite to the opening of Green Bay avenue, are the defendant's car barns. At this point the overhead trolley wires are supported by cross wires attached to posts on either side of Third street. Near the southwest corner of the car barn, on the east side of Third street, is a telephone pole. From this pole the telephone wire runs diagonally across Third street to a pole standing in the sharp angle between Third street and Green Bay avenue. Thence it runs diagonally across Green Bay avenue to a pole on the west side of the avenue, about 100 yards north of the pole on the sharp angle. These poles carried the wire about thirty feet above the ground and about ten feet above the trolley wires. The telephone wire crosses the

trolley wires diagonally.   There were no guard wires over the trolley wires.

At the time of plaintiff's accident the telephone wire was broken, and had fallen upon and lay in contact with the trolley wire, and had become and was charged with electricity by such contact.   It does not appear that the fact that the telephone wire was broken was known to any of the defendant's employees, nor that any negligence on their part had caused the breakage.   The end of the telephone wire so charged with electricity passed along Green Bay avenue, in some places lying upon and in the street.   It was in the evening, and after dark.   The plaintiff was driving along the avenue with his horse and vehicle.   His horse came in contact with the wire, received a shock, and fell.   The plaintiff was thrown from his vehicle.   He is supposed to have received an electric shock both before and after he left the vehicle.   He appears to have received considerable injury.

The telephone wire carries so small a current of electricity as not to be, of itself, dangerous.   The trolley wires carry a much larger current of electricity.   By contact with the trolley wire the telephone wire may become so highly charged as to become dangerous.   The telephone wire was not owned by, nor in any manner under the control of, the defendant.   It is unexplained what occasioned the breaking of the telephone wire.   It did not break in the span which carried it over and across the trolley wires, but in the next span beyond.   It could not have come in contact with the trolley wires had not the fastening of the telephone wire to its pole become so loosened that the wire slipped and the portion over the trolley wires sagged so as to bring it in contact with the trolley wires.

There was a special verdict and judgment for the plaintiff.   The defendant appeals.

For the appellant there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. H. Noyes*.

*Moritz Wittig*, attorney, and *W. J. Turner*, of counsel, for the respondent, contended, *inter alia*, that it was not error to permit Dr. Becker to testify that "it is reasonably probable that there will be no complete recovery." *Griswold v. N. Y. C. & H. R. R. Co.* 115 N. Y. 61; *McLain v. Brooklyn C. R. Co.* 116 id. 459, 468; *Alberti v. N. Y., L. E. & W. R. Co.* 118 id. 77; *Wright v. Hardy,* 22 Wis. 348; *Abbot v. Dwinnell,* 74 id. 514, 520, 521, 522. This case is within the rule of *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72. The statute (sec. 1862, R. S.) required defendant to use the most approved plan of construction. Such plan included the maintenance of guard wires, as was shown by the testimony. And the failure to use such plan was negligence. *Haynes v. Raleigh G. Co.* 114 N. C. 203; *Gleason v. Va. M. R. Co.* 140 U. S. 859; *Kraatz v. Brush E. L. Co.* 82 Mich. 457; *Central P. T. & S. Co. v. W. & W. S. R. Co.* 11 Pa. Co. 417, 1 Pa. Dist. 628; *Electric R. Co. v. Shelton,* 89 Tenn. 423; *Bourget v. Cambridge,* 156 Mass. 390; *Cohen v. New York,* 113 N. Y. 532, 538; *Fitts v. Cream City R. Co.* 59 Wis. 323; *Burt v. Douglas Co. St. R. Co.* 83 id. 229, 232; *McClure v. Sparta,* 84 id. 269, 272; *Augusta R. Co. v. Andrews,* 89 Ga. 653; Booth, St. Railway Law, § 292; Keasbey, Electric Wires, 154, 155.

NEWMAN, J.   Errors are assigned as follows: (1) In the admission of testimony; (2) in denying defendant's motion for a nonsuit, and in refusing to grant a new trial; (3) in refusing to submit to the jury questions proposed by the defendant for special verdict; (4) in the charge to the jury.

The errors complained of in the admission of testimony relate to the testimony of physicians relative to the physical and mental condition of the plaintiff a year and a half after the accident. The accident happened in February, 1892. In August, 1893, the plaintiff became the patient of Dr. Becker. The doctor was permitted to describe the condition in which

he found him, giving both subjective and objective symptoms. So far as this related to the seriousness of the injury, this was competent. Nor was it liable to the objection that it was hearsay. So far as the knowledge of plaintiff's condition was derived from plaintiff's statements to him as a medical man for the purpose of receiving advice and treatment, the testimony was not incompetent for that reason. *Quaife v. C. & N. W. R. Co.* 48 Wis. 513; *Davidson v. Cornell*, 132 N. Y. 228. There is no just ground for claiming that the doctor's relation to the plaintiff was other than as a medical adviser and not for the purpose of being a witness upon the trial. So the question is not within the principle of *Stewart v. Everts*, 76 Wis. 35, and *Abbot v. Heath*, 84 Wis. 314. It is also claimed as error that Dr. Becker was permitted to testify that plaintiff's condition as he found it could have been produced by contact with a wire heavily charged with electricity. The plaintiff's theory was that such was the cause of his condition. There was some testimony tending to establish that theory. Surely, testimony showing that such a cause was sufficient to produce such a condition tended also to establish that theory. The testimony was both relevant and competent. The doctor was permitted to give his opinion of the "reasonable probability" of the plaintiff's ultimate recovery from his injuries. While it is true that the whole testimony must establish in the minds of the jury more than a mere "reasonable probability," and must amount to proof to a "reasonable certainty," this ultimate fact is susceptible of proof by items of testimony which do not separately fully establish it. The phrase "reasonable probability" is equivocal. It was for the jury to give force to the doctor's testimony in accordance with the intention of the words used, rather than with a strict or technical definition of the words. This was not error. The witness Eggert, who was present at the time of the accident, testified that he received a shock. This was probably com-

petent as tending to show that the wire was charged with electricity, and so as bearing upon the question whether the plaintiff's injuries were caused by an electric shock.

The negligence which is alleged and claimed against the defendant is its omission to place guard wires over its trolley wires in such a way as to prevent the telephone wires, in case of their falling from any cause, from falling upon and coming in contact with the trolley wires. It is claimed that the defendant owes the duty to the public to guard it from the effect of accidents which may happen to the telephone wire, which it neither owns nor controls. The employment of electricity to propel cars along railway tracks in cities is of recent institution. It may well be that the dangers attending its use in that function, and the best mode of guarding against accident in its use, are not yet fully known and understood. Many of the phenomena and the possibilities of danger attendant upon such use are still subjects of question and experiment. But notwithstanding this condition of imperfect knowledge, the law permits this mysterious and dangerous power to be used for locomotion in the streets of cities. It is lawfully there. No doubt it is the duty of the defendant to use such customary and approved appliances as are known and used in the business of operating electric railways. So far as reasonable knowledge, in the present state of the science and the practical use of electricity as a motive power for street railways, and reasonable foresight, can go, it is bound to guard the public against the perils attendant upon this use of electricity. But it is liable only for what is known as reasonable care. The present state of the science, and the present practical knowledge of the most practical and effectual means and methods of guarding against such perils as are incident to its use, are a most important element in the question of what is reasonable care. In the present condition of the science and of the practical knowledge on this subject, it

cannot be said, as matter of law, what method of guarding the wires shall be required, nor whether any guards shall be required; for it is not known to the law that any method now known will prove effective. But it is a question for the jury, under all the facts in the case, to determine whether the method actually used was negligent. The trial court treated this question as one of law. He instructed the jury, in effect, that guard wires placed over the trolley wires is the approved method of protecting the telephone wire in such places, and refused to submit to the jury, in the special verdict, the following question proposed by the defendant: "Did the defendant, in the construction and operation of the street railway in question, exercise such care and prudence for the safety of persons using the highway as men of ordinary intelligence and prudence engaged in operating the railway in question would have exercised at the place in question?" The instruction virtually took the question of the defendant's negligence from the jury. The refusal to submit the question asked withdrew it altogether from the jury. The question of the defendant's negligence is always for the jury, unless the negligence is so clear upon the evidence that intelligent minds cannot fairly form different conclusions upon it. This question was a proper one to be submitted in a special verdict. It related to a material issue of fact, and one upon which the case in a large measure turned. Both the charge upon this point and the refusal to submit this question were error. This is in no way inconsistent with what was decided in *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72. That case was on demurrer to the complaint. The action was *mandamus* to compel the railway company to put guard wires above its trolley wires at crossings. An ordinance of the city required it. The complaint alleged the ordinance and that guard wires are the proper and approved method of preventing danger from the falling of the telephone wires upon the trolley

Block vs. Milwaukee Street R. Co.

wires. These facts were admitted by the demurrer. The case in no way involved the decision of the question whether guard wires are the proper method, or whether it is negligence to omit the guard wires.

It is claimed that plaintiff's accident was caused directly by contact with a telephone wire belonging to the telephone company and neither owned nor controlled by the defendant, and in a street to which its system did not extend. More remotely, it is supposed to have been caused by the falling of the telephone wire' upon the trolley wires, which became a live wire by such contact. There would be no claim against the defendant unless it could be shown that the telephone wire was alive with electricity communicated to it by the trolley wires. The defendant may be liable for the result if its omission to guard its wires was negligence and if that negligence was the proximate cause of the plaintiff's damages. The real first cause of the accident is in doubt. The real test of the defendant's liability for the plaintiff's accident is whether the omission to guard its wire, that being found by the jury to be negligence, was the proximate cause of the accident. The negligence is not the proximate cause of the accident unless, under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 163; *Barton v. Pepin Co. Agr. Soc.* 83 Wis. 19. This, too, is always a question for the jury where the evidence is not clear or the proper inference from undisputed evidence may be in doubt. The defendant asked to have this question submitted in the special verdict. This was refused, and no instruction was given relating to this element in the question of proximate cause. The defendant's proposed question was as follows: " Ought men of ordinary intelligence and

prudence, engaged in operating the street railway in question, to have reasonably expected that the telephone wire in question would be likely to come in contact with its trolley wire at the place in question and occasion injury to persons lawfully using the highway crossed by said telephone wire?" The refusal to submit this question, in a proper case, has been held by this court to be error. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141. These two special questions, which the trial court refused to submit, cover the whole question of the defendant's liability. Was the defendant negligent? Was the negligence the (proximate) cause of the damages? These are material issuable facts, such as a party has the right under the statute to require to be submitted in a special verdict. They should have been submitted, at least in substance.

The charge of the trial court was long and copious. It contained a long and able disquisition upon the subject of the uses and purposes of highways and of the rights of travelers to free and unobstructed passage therein. He said: "The public have the right to the free and unmolested and unobstructed use of the streets, and no person has the right to hinder and prevent the use of the streets for the purpose of travel," and much more to the same purpose. It would be all very well in a case where questions of that nature were involved. But in this case it tended really to keep out of sight and obscure the real point in controversy. Both the telephone company and the defendant had a perfect legal right to have their wires over the streets. They were no illegal obstruction of the streets. The point involved in relation to them depended on entirely different considerations. It was whether the defendant was negligent in permitting the telephone wire to fall upon its wires. This part of the charge went upon a mistaken theory of the case, and was very likely to mislead the jury by distracting attention from the point of stress in the case.

Relating to the amount of the damages to which the plaintiff might be entitled, and as affected by the permanency of the plaintiff's injuries, the court charged: "I instruct you, gentlemen, that you cannot take into consideration, as an element of damages, any testimony on the subject of the permanency of the injuries, unless you find from the testimony that there is reasonable probability that the injury that he has sustained, and the suffering and disability he is now under, will be permanent and lasting." The criticism is on the phrase "reasonable probability." Because the phrase is equivocal it is liable to communicate to the jury an erroneous impression that some degree of proof less than of reasonable certainty may be sufficient. It is settled in this court that the degree of proof must amount to reasonable certainty. *White v. Milwaukee C. R. Co.* 61 Wis. 536; *Hardy v. Milwaukee St. R. Co., ante,* p. 183. The defendant asked for a special instruction to the effect that damages as for permanent injury should not be allowed unless the jury could say from the evidence that it was reasonably certain that the injury would be permanent, and that reasonable probability was not sufficient. This the court refused to give. The instruction given was erroneous, and it was error to refuse the instruction requested.

For the errors mentioned the judgment must be reversed.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause remanded for a new trial.