# CIRCUIT COURT REPORTS.

## VOLUME IV—NEW SERIES.

---

## CAUSES ARGUED AND DETERMINED IN THE CIRCUIT COURTS OF OHIO.

---

### INJURY FROM A BROKEN TELEPHONE WIRE.

[Circuit Court of Geauga County.]

THE BURTON TELEPHONE COMPANY V. NELLIE GORDON.

Decided, February Term, 1904.

*Telephone Wire—Breaks and Falls Across Trolley Wires and Onto the Highway—Becomes Heavily Charged and Injures a Traveler—Necessity for Guard Wires.*

Where an injury is occasioned to a traveler upon the public highway by reason of coming in contact with a broken telephone wire which was heavily charged with electricity caused by its falling across the trolley wires of an electric railway:

*Held:* That whether or not it was the duty of the telephone company to have safe-guarded its wire by guard wires or other appliances to prevent it from becoming so dangerously charged, is a mixed question of law and fact, under the circumstances of each particular case, to be submitted to the jury; and where the jury under proper instructions from the court finds the company negligent for such

1

failure, a judgment upon the verdict will not be reversed except the verdict is clearly against the evidence.

The brief of Wm. R. King, attorney for plaintiff in error in this case, was as follows:

No statute of the state of Ohio requires any special construc-tion at the crossing of telephone and power wires. This crossing was constructed of good material and it nowhere appears in the evidence that the crossing was faulty. What a "guard wire" is or that one was ever erected or known does not appear from this record; nor does it appear that a guard wire or any other device would have been effective. Good construction and ma-terial being admitted and that the wire fell on the trolley through no fault in the wire or fastenings, but from lightning stroke during a severe storm, and that the construction was that in ordinary use, no different construction disclosed by the evi-dence being anywhere in use, negligence on the part of the com-pany was rebutted.

To entitle the plaintiff to recover the duty was on the plaintiff to show by evidence what means should have been used to prevent contact not actually used by the defendant, and that such means would have been effective. In short, what would have been proper construction and in what respect the crossing in question was not properly constructed, this the plaintiff had not shown nor attempted to show, hence there was nothing to go to the jury. In this state of the evidence at the close of the plaintiff's case we think the court erred in submitting to the jury the issue as to whether other means should have been used to prevent con-tact, which in effect said to them that they had a right to specu-late outside and beyond the evidence as to what the defendant should have done and decide from their own instincts and ideas that some device or means would have prevented the wire from falling and coming in contact with the trolley, not disclosed by the evidence. We base this contention on the case in 6 C. C. Rep., 606.

Brief of N. H. Bostwick, attorney for defendant in error:

Defendant in error contends that reasonable care required that the telephone wire should have been insulated and pro-tected by guard wire or other means in such manner that when it

should fall it could not come in contact with the power wire and transmit the dangerous current to the street below. That company's failure to do so was negligence and was the proximate cause of her injury, and the jury so find it to be. 21 A. & E. Enc. of Law, 2d Ed., 470; 31 L. R. A., 506-570-571, 577 and 590; 39 L. R. A., 499; 53 L. R. A., 147-149; 39 L. R. A., 499; 33 L. R. A., 798; A. & E. Enc. of Law, 2d Ed., 487; 106 Mass., 460; 13 N. P., 234; 43 L. R. A., 508.

COOK, J.; LAUBIE, J., and BURROWS, J., concur.

Error to Court of Common Pleas of Geauga County.

The action below was to recover damages by reason of personal injuries to defendant in error in coming in contact with a wire of the telephone company lying in the public highway, which was heavily charged with electricity.

There was a trial and a verdict for plaintiff below against the company; a motion for a new trial on the part of the company, which was overruled, and judgment upon the verdict.

There is little dispute about the facts. The telephone company, having obtained legal authority so to do some years before the injury, constructed a one-wire line from the village of Middlefield to the village of Burton in Geauga county, along the public highway. Some time after the line was constructed The Cleveland & Eastern Railway Company constructed an interurban electric railway between the same villages over a right of way procured by it, not upon the public highway. At a point about half a mile from Burton the electric railway crossed the public highway, intersecting the telephone line about at right angles. Where the intersection took place the electric railway company put in a pole on the public highway on which it strung four one-half inch copper wires; two feed wires on a cross bar on top of the pole and two trolley wires upon an arm extending out from the pole. The pole was about twenty-one feet high and the arm upon which the trolley wires were strung was about fourteen feet from the ground. By an arrangement between the telephone company and the railway company the telephone wire was also attached to this same pole about four feet above the two trolley wires, by a glass insulator connected with a metal

bracket, and ran across the two trolley wires about four feet above the same to a pole of the telephone company, also on the public highway, about fifteen feet distant. The telephone wire was not insulated, incased or otherwise guarded. During a severe storm on the evening of June 1st, 1901, this pole of the railway company was struck by lightning; it was shivered and the metal bracket with the glass insulator which supported the telephone wire was knocked from the pole and the telephone wire dropped down and across the trolley wires of the railway company and became charged with a large voltage of electricity from the trolley wires. The evidence does not show that the metal bracket was not properly fastened to the pole or that there was any defect in the wire as to strength or size or that it was impaired or deteriorated to any extent. During the same storm a pole of the telephone company at the outskirts of Burton close to the residence of defendant in error, standing in the highway about one-half mile from the pole referred to, was also struck by lightning and the same wire by the intense heat was severed and that end of the wire next to the first pole referred to fell upon the ground close to the pole, and defendant in error but a very short time after the storm, possibly twenty to thirty minutes, in going to the house of a neighbor upon the public highway at a place where she had a right to be, inadvertently became entangled in the wire and was severely burned and injured by the large amount of electricity in the wire communicated from the trolley wires of the railway company. The poles of the telephone and railway companies had previously been frequently struck by lightning and the wires detached, prior to the injury complained of. The wires were placed by the railway company upon its poles as wires are usually placed when electric railway lines and telephone lines intersect each other.

At the conclusion of plaintiff's evidence a motion was made to take the case from the jury and render a judgment for the telephone company. This motion was overruled as was also, as we have said, the motion for a new trial; and plaintiff in error claims that the court erred in both these regards.

It must be conceded that the judgment of the court below can only be sustained upon the theory that it was the legal duty of

the telephone company under the circumstances to have adopted some means that would reasonably prevent its wire from becoming dangerously charged with electricity from the trolley wires of the railway company and that its failure to do so was negligence.

The introduction of electricity as means of commerce is of recent date. That it may be lawfully used is recognized by both the legislative and judicial department of the state. While it is highly useful, at the same time its use is attended by the greatest danger to person and property. Its potentialities for good are great, but its destructive power is equally as great. It is of the most subtle nature, so subtle that its presence can only be determined by contact which, when it is not under control, usually results in death or great bodily injury.

The use of the public highway is primarily for the public convenience for the purposes of travel. The plaintiff below was upon the side of the highway, and she had a right to rely that she was walking in a safe place. She had a perfect right to go on her way justified by the law that her pathway was secure. If these companies had jointly placed something in the public highway' with which she might inadvertently come in contact which was filled with peril, the duty devolved upon them and each of them to show that the peril arose through no fault of theirs.

In *Western Union Telegraph Company et al* v. *State, for use of Nelson,* 33 Atlantic Reporter, 763, Justice Page of the Court of Appeals of Maryland in a case where Nelson was killed by reason of coming in contact with a broken telegraph wire heavily charged with electricity from the wires of an electric railway company, well says:

''The railway company pursued its business by means of cars propelled by electricity partially supplied through feed wires over and along the edge of the pavement. The telegraph company had its poles also along the curb line, and its wires extending along the street were over and along the feed wire which carried a deadly current. The privilege so granted thus to incumber the public highway with appliances so likely to become dangerous to the public safety unless properly employed and controlled, imposed upon them, and each of them, the duty

of so managing their affairs as not to injure persons lawfully on the streets. They owed it to Nelson that his lawful use of the street should be substantially as safe as it was before the telegraph and railway plants had so occupied it. It was their plain duty not only to properly erect their plants but to maintain them in such condition as not to endanger the public.''

Manifestly this is the true rule. Highways are not for the benefit of private corporations, although of a public service character, but for the convenience of the public and when they are appropriated for any other purpose than ordinary public travel reasonable care requires that the care proportionate to the danger must be exercised by such corporations to protect the traveler from harm. This legal principle can not be too often emphasized.

In *Denver Consolidated Electric Company* v. *John H. Simpson*, 31 L. R. A., 566, it is held:

''An instruction that a company maintaining an electric wire carrying a dangerous current over a public street or alley is not an insurer of the safety of passers-by, but in constructing its line and maintaining the same is bound by the utmost degree of care and diligence—that is, to the highest degree of care, skill and diligence so as to make the same safe against accidents so far as such safety can by the use of such care and diligence be secured—is not erroneous, although it is better to instruct the jury that the company is bound to exercise that reasonable care and caution which would be exercised by a reasonably cautious and prudent person under the same circumstances.''

Campbell, J., in the opinion says:

''We think the court was unfortunate in attempting to draw any distinctions in the degrees of care or negligence. It would have been safer and the better practice to instruct the jury, which ought hereafter to be observed, even in cases like the one before us, that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same or similar circumstances.

''In addition to this, the jury should have been instructed that the care increases as the danger does and that where the business in question is attended with great peril to the public, the care to be exercised by the person conducting the business is commensurate with the increased danger. But in effect this

is what the court did. Under the facts of the case, the law required of the defendant, conducting, as it did, a business so dangerous to the public, the highest degree of care which skill and foresight can attain, consistent with the practical conduct of its business under the known methods and the present state of the particular art.''

Would not the exercise of reasonable care upon the part of these two companies that jointly occupied this pole for their wires have required that they should have put up guard wires or adopted some other appliance to have prevented the two wires from coming in contact with each other? They necessarily knew that if the telephone wire fell across the trolley wires injury and possibly death very probably would follow. Had not the break taken place the central station at Burton would have been burned out. If connection was made, a patron with his ear at a telephone on the line would have been injured, possibly killed.

The poles of both companies had many times been previously struck by lightning in electric storms, wires detached, and just such an occurrence as this one should have been anticipated; yet nothing whatever was done to prevent the wires from coming in contact.

In order, however, that a party may be liable in negligence, it is not necessary that he should have contemplated or even been able to anticipate the particular consequences which ensued or the precise injuries sustained by the plaintiff. It is sufficient if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission or that consequences of a generally injurious nature might have been expected. 21 A. & E. En. Law, 487.

In case of *United Electric Railway Company et al* v. *Shelton,* 89 Tenn., 423 (14 S. W. R., 863), the court held:

''The wire of a telephone company had become impaired where it crossed an electric railway wire, and was in such a condition as to arrest the notice of a prudent man engaged in the business of either company. There was no guard wire over the electric wire. The fall of a burning building broke a telephone pole, which caused the telephone wire to break and fall across the railway wire; and, while in this condition, plaintiff's horse came

in contact with the telephone wire, and was killed. *Held:* That both companies were negligent and liable for the value of the horse."

Turney, C. J., in the opinion says:

"Shelton's horse was killed by coming in contact with a wire of the telegraph and telephone company which had fallen across the trolley wire of the electric railway company. The wire of the telephone company had become much impaired. The falling of a wall of a burning building broke a pole of the telephone company, breaking the wires at several points. At the point of the accident the telephone wires crossed the railway track above the trolley. A broken wire fell across the trolley wire, and, while resting on it, the horse came in contact with it and was instantly killed. There was no guard wire over the trolley wire. The case was tried by the circuit judge without the intervention of a jury. The condition of the telephone wire was such as to arrest the attention of a prudent man engaged in the business of either company. The circuit judge found, under the facts, that both companies were guilty of negligence and responsible for the loss, and gave judgment accordingly. The judgment is correct. While it was the primary duty of the telephone company to see that its wires were in a reasonably safe and sound condition, and protected against the contingency of falling, it was also a duty of the electric company to see that its trolley was in like manner protected from such contingency. While it was the duty of the one company not to use unsound and unprotected wires, it was equally the duty of the other not to operate its road under such defective machinery. It might as well insist that it was not responsible for damages resulting from the fall of a hanging rock which it had constantly recognized as threatening to fall, or of a dead tree which it had frequently noticed with decayed and giving roots, and knew would fall in the first wind or rain. The obligation to see that its road was in good repair, and its machinery in safe operating order, is not confined to the immediate and abstract presence of either, but extends to all surroundings that may depreciate the security of either. Both companies knew of the unprotected trolley, and the consequences of a contact of the wires of the one with those of the other. Both knew of the unsoundness likely to produce a fall of the one upon those of the other. Both were bound to guard against such likelihood, and, having failed to do so, are liable. Affirmed."

In *Block* v. *Milwaukee Street Railway,* in the Supreme Court of Wisconsin, 89 Wisconsin, 371 (61 North Western Reporter,

1101), was a case in which Block was injured in coming in contact with a telephone wire which had fallen upon the defendant's trolley wire, and the negligence complained of was the failure of the street railway company to put guard wires over its trolley wires so as to prevent the telephone wires from coming in contact with the trolley wires. The judge, upon the trial of the case, instructed the jury that such failure constituted negligence as a matter of law and practically told the jury to return a verdict for plaintiff. Upon appeal to the Supreme Court, Newman, J., who rendered the opinion, says:

"In the present condition of the science and of the practical knowledge on this subject it can not be said, as a matter of law, what method of guarding the wires shall be required, nor whether any guards shall be required; for it is not known to the law that any method now known will prove effective. But it is a question for the jury, under all the facts in the case, to determine whether the method actually used was negligent. The trial court treated this question as one of law. He instructed the jury, in effect, that guard wires placed over the trolley wires is the approved method of protecting the telephone wire, in such places, and refused to submit to the jury in the special verdict the following question proposed by defendant: 'Did the defendant in the construction and operation of the street railway in question exercise such care and prudence for the safety of persons using the highway as men of ordinary intelligence and prudence engaged in operating the railway in question would have exercised at the place in question?' The instruction virtually took the question of defendant's negligence from the jury. The refusal to submit the question asked withdrew it altogether from the jury. The question of defendant's negligence is always for the jury, unless the negligence is so clear from the evidence that intelligent minds can not fairly form different conclusions upon it. The question was a proper one to be submitted in a special verdict. It related to a material issue of fact, and one upon which the case in a large measure turned. Both the charge upon this point and the refusal to submit this question were error. This is in no way inconsistent with what was decided in *State* v. *Janesville Street Railway Company,* 87 Wis., 72 (57 N. W., 970). That case was on demurrer to the complaint. The action was mandamus to compel the railway company to put guard wires above its trolley wires at crossings. An ordinance of the city required it. The complaint alleged the ordinance, and that guard wires are the proper and approved

method of preventing danger from the falling of the telephone wires upon the trolley wires. These facts were admitted by the demurrer. The case in no way involved the decision of the question whether guard wires are the proper method, or whether it is negligence to omit the guard wires.''

Not only in the case of *The State, ex rel Wisconsin Telephone Company,* v. *Janesville Street Railway Company,* 87 Wis., 75, but in many other cases it has been held that an ordinance requiring the company to put up guard wires is a reasonable provision and that is the general holding upon that question (31 L. R. A., Note, pages 582-583, etc.) If such an ordinance of a municipal corporation would be a reasonable provision, can it be said that, when a jury under all the circumstances of the case, finds that such provision should have been made by the companies to protect the traveler, its finding is wrong? Furthermore it is for the jury to draw the inference under a given state of facts, when fair intelligent minds would differ as to whether or not it was negligence. *Block* v. *Milwaukee Street Railway Co., supra.*

To the same effect is the case of *Cincinnati Street Railway Company* v. *Snell,* 54 O. S., 197.

We think the court was right in not taking the case from the jury and in also overruling the motion for a new trial.

It is hardly necessary for us to say that in such case both the railway company and the telephone company would be liable, and if jointly liable, they would be severally liable. *McKay* v. *Southern Bell Telephone Co.,* 19 Southern Reporter, 695; *City Electric St. Ry. Co.* v. *Conery,* 33 Southwestern Reporter, 426.

Judgment affirmed.

*Wm. G. King,* for plaintiff in error.

*N. H. Bostwick,* for defendant in error.