City of Marshfield vs. Wisconsin Telephone Co.

CITY OF MARSHFIELD, Respondent, vs. WISCONSIN TELEPHONE COMPANY, imp., Appellant.

*March 17 — April 4, 1899.*

*Telephone companies: Right to use highways: Municipal regulation.*

1. The right given to telegraph and telephone companies by sec. 1778, Stats. 1898, to construct and maintain their lines upon or along highways, is subject to all reasonable regulations made by the respective municipalities.

2. A municipality may, in the exercise of a reasonable discretion, prohibit the setting of telephone poles in certain of its streets.

City of Marshfield vs. Wisconsin Telephone Co.

3. Where a city charter gives the common council authority to regu-
late by ordinance the placing of telephone poles, etc., in its streets,
and provides that no obstruction shall be placed in the streets
without a written permit from the board of public works, and that
said board shall have power to determine the time and manner of
using streets for the placing of such poles, subject to an appeal to
the council, sec. 1778, Stats. 1898, confers no right upon a telephone
company to occupy the streets of said city without the permission
of the proper authorities, even though no regulation as to such use
has been adopted; but application for such permission should be
made to the board of public works and a reasonable time given for
that body to act, and if its action proves unsatisfactory an appeal
should be taken to the council.

4. In the absence of a proper and timely application to the board of
public works in such a case, the court has no right to interfere to
compel it to act.

APPEAL from an order of the circuit court for Wood county:
W. C. SILVERTHORN, Judge.  *Affirmed.*

The defendant *The Wisconsin Telephone Company* is a cor-
poration organized under the laws of this state, and is author-
ized by its charter to build telephone lines and to conduct a
telephone business in this state.  It maintains seventy-five
different telephone exchanges in the cities and towns of
Wisconsin, with wires strung on poles connecting said ex-
changes with each other and with exchanges in other states.
It has constructed a line from the city of Stevens Point
westerly to the city of Chippewa Falls, passing just outside
the northerly limits of the city of *Marshfield,* which was
completed in the spring of 1898.  It was desirous of estab-
lishing a public station in said city, and proposed to con-
struct a line of poles along Central avenue to some con-
venient point where the station was to be located.  Central
avenue is the main business street of the city, and has been
paved along the business portion thereof, and upon it the
greater portion of the travel and business of the city is done.
It has been the policy of the city to keep that portion of this
street between D and Sixth streets clear of all obstructions,

and for more than five years it has uniformly denied to all persons the privilege of placing telephone, telegraph, electric light, or other poles in or along the same. In February, 1898, the city granted to R. L. Kraus and K. W. Doege an exclusive permit for fifteen years to erect and maintain a system of wires and poles upon the streets of said city, for the purpose of establishing a telephone exchange therein, upon certain conditions specified in the ordinance, and under the direction of the board of public works.

On October 14, 1898, the defendant with a force of men commenced the erection of a run of poles from the intersection of its main line with Central avenue, southerly along said avenue toward the central and main portion of the city, and placed and set a number of poles therein, without permission of any of the city authorities. The latter objected to this procedure, and under their direction the poles so set were chopped down and removed. Thereupon the city commenced this action to restrain defendants from placing any poles on Central avenue, or in any of the streets of the city, except under the direction and with the consent of the board of public works; claiming that the digging up of the soil and pavement and the placing of poles in said street would be a permanent injury and obstruction thereto. A temporary injunction was obtained and served. Thereupon defendants obtained an order to show cause why the injunctional order should not be vacated. On the hearing the defendants submitted a modified motion, to the effect that, if the court should be of opinion that the defendants should be restrained from constructing their line upon Central avenue, then that the order be so modified as to permit the line to be constructed upon some other streets in said city. Both motions were denied, and the original order was allowed to stand. This appeal is to review the order denying the motion to dissolve the injunction.

For the appellant there were briefs by *Miller, Noyes, Mil-*

*ler & Wahl*, and oral argument by *Geo. P. Miller*. They contended, *inter alia:* 1. The streets in the city of *Marshfield* belong to the public, not to the city. The city has no proprietary interest in a street. The construction and maintenance of a telephone line in a street is a public use of the street, the authority for which must be derived from the legislature. 2 Dillon, Mun. Corp. (4th ed.), §§ 656, 675; *Paine L. Co. v. Oshkosh*, 89 Wis. 460; *Milwaukee v. M. & B. R. Co.* 7 Wis. 85; *Sheboygan v. S. & F. du L. R. Co.* 21 Wis. 667; *Janesville v. Carpenter*, 77 Wis. 297; *Waukesha H. M. S. Co. v. Waukesha*, 83 Wis. 480; *Neshkoro v. Nest*, 85 Wis. 128; *Trester v. Sheboygan*, 87 Wis. 500. Power to regulate and control streets does not authorize the common council to grant telephone or other franchises. *Davis v. New York*, 14 N. Y. 506; 2 Dillon, Mun. Corp. §§ 715–717. The city of *Marshfield*, under its charter, had not only no authority to grant any telephone franchise, but particularly not an *exclusive* franchise. An exclusive franchise can be granted by the legislature or by a municipality upon express legislative authority. *Jackson Co. H. R. Co. v. Interstate R. T. R. Co.* 24 Fed. Rep. 306; *Wright v. Nagle*, 101 U. S. 791; *New Orleans G. Co. v. Louisiana L. Co.* 115 U. S. 653; *Saginaw G. L. Co. v. Saginaw*, 28 Fed. Rep. 534; *State v. Milwaukee G. L. Co.* 29 Wis. 454. 2. By the general statutes of the state, authority is given to all telephone companies to place poles along the streets and highways of the state. Sec. 1778, Stats. 1898. This statute was copied from Massachusetts (Laws of 1849, ch. 93). Sec. 3 of the Massachusetts act provides that the poles shall be located where the local authorities may provide. *Young v. Yarmouth*, 9 Gray, 388, 389. That section was not re-enacted in Wisconsin; and under our statute the company was authorized to place its poles along the highways of the state without the local authorities being required to first authorize the location of the poles. 3. Sec. 1778, authorizing the con-

struction of telephone lines upon the streets of a city, does not deprive the city of its police control. *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 79, and cases cited. The company had the right to place its lines of poles along the streets of the city, subject to the right of the city to pass regulating ordinances in the exercise of its police power; but the city could not wholly exclude the company. *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 40. 4. Sec. 7, ch. XI, of the *Marshfield* city charter (ch. 160, Laws of 1891) does not change the general rule that telephone companies can construct their lines along streets without first obtaining permission from the local authorities. 5. A court of equity will not, by injunction, enforce a void exclusive telephone ordinance. Even a municipality coming into a court of equity must be willing to do equity or relief will be denied.

*P. A. Williams,* attorney, and *B. R. Goggins,* of counsel, for the respondent, argued, among other things, that while the streets in the city of *Marshfield* belong to the public, the city has nevertheless full control of its streets, and in this respect represents the public in relation thereto. *Waukesha H. M. S. Co. v. Waukesha,* 83 Wis. 475; *Jamestown v. C., B. & N. R. Co.* 69 Wis. 648; 2 Dillon, Mun. Corp. (4th ed.), § 659; *Madison v. Mayers,* 97 Wis. 399, 413; *Eau Claire v. Matzke,* 86 Wis. 291; *Neshkoro v. Nest,* 85 Wis. 126. The erection of a run of poles along a public street not only results in the temporary digging up and disturbance of its soil and pavement (as in *Waukesha H. M. S. Co. v. Waukesha, supra*), but also results in its permanent obstruction, and is a nuisance *per se.* 2 Dillon, Mun. Corp. § 698; Elliott, Roads & S. 478, and cases cited; Keasbey, Electric Wires, 45; *State v. Berdetta,* 73 Ind. 185, 193; *St. Louis v. W. U. Tel. Co.* 148 U. S. 92. Telephone companies are authorized by law to enter upon the highways and streets of the state only upon condition that they obtain from the respective towns, cities, and other municipalities the consent of their

City of Marshfield vs. Wisconsin Telephone Co.

several governing bodies. *Eels v. Am. T. & T. Co.* 143 N. Y. 133; *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83; *Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 561. A telegraph or telephone line cannot be constructed on a public highway or street, except with the consent of the state. 2 Cook, Stock, §§ 930, 931; *People's Railroad v. Memphis Railroad,* 10 Wall. 38, 51; *Cater v. Northwestern Tel. Exch. Co.* 60 Minn. 539. The general plan in force in most of the states is for the legislature, in reference to such matters, to give its consent by general enactment in advance, but requiring the consent of the municipality in each individual case. 2 Cook, Stock, § 913; 2 Dillon, Mun. Corp. § 719; Elliott, Roads & S. 484, and cases cited. And privileges granted by the legislature to such corporations are strictly construed against the corporation, and nothing passes but what is granted in clear and explicit terms. *People ex rel. Third Ave. R. Co. v. Newton,* 112 N. Y. 397. Even where the power of the municipality is, by the legislature, restricted to the designation of the streets and of the manner of placing the poles therein, proper application to the proper authorities is held to be a condition precedent to the right to set up poles. *New York & N. J. Tel. Co. v. East Orange,* 42 N. J. Eq. 490; *Broome v. N. Y. & N. J. Tel. Co.* 49 N. J. Law, 624; *New York & N. J. Tel. Co. v. Broome,* 50 N. J. Law, 432; *Winter v. N. Y. & N. J. Tel. Co.* 51 N. J. Law, 83. See, also, *Suburban L. & P. Co. v. Boston,* 153 Mass. 200; *Pierce v. Drew,* 136 Mass. 75.

BARDEEN, J. Both parties admit the public character of the streets of a city and the almost omnipotent control of the legislature· over their use. The city does not own, and cannot alien, its streets. It cannot rightfully authorize obstructions therein without legislative authority. Its duties and obligations with respect thereto are defined in its char-

ter. The general law grants powers and privileges to persons or corporations like the defendant company, to be exercised by municipal consent or subject to municipal limitations. Sec. 1778, Stats. 1898, under the interpretation of this court, authorizes the use of the highways of this state by corporations like the defendant, by their poles and wires, provided they are so set as not to obstruct or incommode the public use thereof. *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 32; *Roberts v. Wis. Tel. Co.* 77 Wis. 589. And see *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72. It is conceded by appellant that this section does not deprive cities of their power of police control over the manner in which such work shall be done, and that they may adopt, by ordinance, all reasonable regulations for the location and use of telephone poles and wires in the streets. Sec. 4, subch. IV, ch. 160, Laws of 1891 (plaintiff's charter), provides: " The common council shall have authority by ordinances, resolutions, by-laws or regulations:     . .  (26) To lay out, make, open and keep in repair, alter or discontinue, any highways, streets, lanes and alleys, and to keep them free from incumbrances and to protect them from injury. (27) To establish and alter the grades of streets, and to regulate the manner of using the streets in said city, and to protect the same from injury by vehicles used thereon."

Construing similar provisions in the charter of the city of Janesville, this court, in 87 Wis. 72, before cited, said: "There can be no question, at this late day, but that our municipal corporations may make all reasonable regulations for the location and use of electric wires in the streets, and require all reasonable safeguards for the same. The question is virtually settled in this state by our own decisions." The authorities and decisions there cited seem fully to warrant that conclusion. That, in the exercise of this power, the city authorities may go so far as to prohibit the incumbering by telephone poles of certain of its streets, in the exercise of a

reasonable discretion, is equally clear. Such right necessarily follows from the grant of the power to regulate. It is also implied from the fact that the dominant purpose of a street is for public passage, and any appropriation of it by a legislative sanction to other objects must be deemed to be in subordination to this use, unless a contrary intent is clearly expressed. *Hudson River Tel. Co. v. Watervliet T. & R. Co.* 135 N. Y. 393; *Utica v. Utica Tel. Co.* 24 App. Div. 361. Or, to state the rule in another way: "All legislative grants to private corporations to occupy streets with electrical appliances are impliedly, if not expressly, subject to the police powers of the municipality, both to dictate and to change the location of such plant." *Monongahela v. Monongahela E. L. Co.* 4 Am. El. Cas. 53.

But, it is said, the city of *Marshfield* has never passed any ordinance or by-law regulating the placing of poles in its streets, and it is argued that, as defendants were not violating any regulation in that respect, this action cannot be maintained. Sec. 7, subch. XI, of the charter provides: "No building shall be moved through the streets or obstructions be placed therein without a written permit therefor granted by the board of public works; said board shall have power to determine the time and manner of using the streets for laying or changing water pipes, or placing and maintaining electric lights, telegraph and telephone poles; provided, however, that the decision of said board in this regard may be appealed to the common council." This provision gives to the board of public works ample power to exercise control over the streets of the city, subject to appeal to the council. Whether it gives them the power to totally prohibit the incumbering of the streets of the city by telephone poles is not necessary to decide. The city makes no such claim, but it does insist that its streets shall not be so incumbered except under the direction of the proper officers.

The record shows that the defendant Gallagher, repre-

senting the company, went to Mr. Hoffman, the chairman of the board of public works, about 11 a. m. of October 14th, and said he was ready with a crew of men, and wished the consent of the board to set a line of poles along Central avenue from its main line to the business part of the city. He was informed that the chairman had no power to give such consent, that some of the members were out of the city, but that a meeting of the board would be called not later than the evening of that day to act upon such request. Gallagher replied that he was ready with his men to set the poles, and would not wait for such meeting; that his instructions were to set the poles immediately, and he would do so, independent of the board or the other city authorities, which he forthwith proceeded to do until forced to stop. It is such conduct as this that creates and fosters feelings of prejudice against corporations. It was in utter disregard of the city's rights.

The city had theretofore granted a franchise for a local exchange. Under it the local company had a right to use certain of the streets for its poles, under the direction of the board. It cuts no figure in this case that the franchise was exclusive for a limited time. If it was wrong, it did not justify the defendant in committing another wrong. The fact that the common council had adopted no ordinances, or the board of public works had passed no regulations, in relation to pole setting, affords the defendant no justification for its procedure. While it is true the city might have enacted ordinances on the general subject of the incumbering of the street, yet from the very nature of the situation it was impossible to anticipate the needs or desires of a company coming in as the defendant did. Before the board could act intelligently, it was necessary for them to know something about the desires and intentions of parties desiring to use the streets. When the situation had sufficiently developed that the board could act understandingly, it became its duty to act, and to act reasonably. It was likewise

incumbent upon the defendant to make its purposes and wishes known to the board, and to give them a reasonable time to take action. The defendant had no right to enter upon the streets of the city, even though no prohibitory ordinances had been passed, and occupy them as it pleased, and set up poles that were obstructions, at will. Its right to go upon the streets with its structures was limited by the charter provisions mentioned, and, until it had complied with their requirements, it was without legal justification. Here was a city of 5,000 people, with waterworks, electric lights, a local exchange, and paved streets. Considerations of local pride seemed to demand that their main business street, in the business center, should be kept clear of obstructions or incumbrances. The board had an undoubted right, in the exercise of a reasonable discretion, to prohibit the incumbering of Central avenue with wires and poles. The discretion of that body could be controlled by the council on appeal. It was not within the power of the council to determine the time when or the manner in which defendant might set up its line, except in the exercise of its appellate jurisdiction over the board.

We do not say that the city has the right to entirely exclude the defendant from entering the city, because, under the facts, that question is not before us. We do hold, however, that, before the defendant can occupy any of the streets, application should be made to the board of public works, and a reasonable time given for that body to act. Its action is subject to review by the council, on appeal, if not satisfactory. In the exercise of its powers, the council may consider that the rights of the defendant under the general law are in subordination to the police powers vested in the city authorities, and may adopt all reasonable regulations necessary to prevent its streets from being obstructed or incumbered. If it acts contrary to law, no doubt an ample remedy exists.

Defendant's so-called modified motion must also fail. The court will not assume to control the action of the board of public works. When a proper and timely application has been made to the board, they may be compelled to act. Until then the court has no right to interfere.

*By the Court.*— The order of the circuit court is affirmed.