CHARLES H. MACKLIN, FOR HIMSELF, ET AL. v. THE HOME TELEPHONE COMPANY ET AL.

**1. RIGHTS OF TELEPHONE COMPANIES IN STREETS OF MUNICIPALITIES.**

The franchise or right of a telephone company to occupy and use the public ways of a municipality for the construction of telephone lines along and upon such public ways, by the erection of the necessary fixtures for the necessary wires, in this state, is conferred directly upon such company from the sovereign state by legislative enactment, contained in Title 2, Chap. 4, Rev. Stat., embracing Secs. 3454 to Sec. 3471-8, inclusive, and is subject only to the control of the municipal corporation in the proper exercise of its police power, the right to fix and agree with such company, upon the manner of use thereof, and in the discharge of the duty imposed by Sec. 2640 Rev. Stat., to cause the said public ways " to be kept open, in repair and free from nuisance." Therefore—

**2. MUNICIPALITY CANNOT FIX PRICE FOR TELEPHONE SERVICE TO TELEPHONE PATRONS.**

A municipal corporation is destitute of power to fix a price to be charged for telephone service by such company; and is possessed of no beneficial interest in the said public ways that is or may become the subject of barter; or, that will supply a consideration, either valuable or good, to sustain an agreement with such company fixing the rate it may charge for such service, and such an agreement is void for want of consideration.

**3. FRAUD—ESTOPPEL.—REASONABLE CHARGE—INJUNCTION.**

It is the duty of the council of a municipal corporation to agree with a telephone company, requesting it, fixing the manner of use of its public ways, without compensation or subsidy; and while it is not commendable, or to be countenanced, to mislead the council of a municipality into the discharge of a plain duty, that of fixing the manner of use of its public ways by a telephone company, yet if the municipality is not thereby induced to part with something of value and is not injured in any way, and the party guilty of misleading, derives no substantial benefit from the transaction, other than such as would result from a proper discharge of such plain duty, no legal fraud is practiced; there is no element of estoppel in the case, and injunction will not lie to prevent a just and reasonable charge for telephone service within such municipality.

APPEAL from court of common pleas of Hancock county.

Reed Metzler, for plaintiffs and the city of Findlay.

John Poe, J. B. Waight and W. L. Cary, Jr., for telephone company.

DAY, J.

The plaintiff, Charles H. Macklin, brings this suit in his own name, for himself and numerous other persons similarly situated and having like interests with himself. The Home Telephone Company of Findlay and the city of Findlay are made defendants; and the action is to enjoin the telephone company, which is a corporation owning and operating a telephone plant in said city, from charging plaintiff and others a rate of more than one dollar per month for residence phones, and from removing phones from the residences of plaintiff and others, because of their refusal to pay more than a rate of one dollar per month for such service; that sum, $12.00 per year, being the maximum rate of charge for residence phone service permitted to said company by the provisions of an ordinance, duly enacted and published, by the council of said city; the provisions of which ordinance, it is averred, were accepted by the said company and acted upon in the construction of its said plant, the transaction constituting a solemn contract between the said city and said company, valid and binding on said company.

The right to an injunction in the case is based on the averments that the said company is demanding payment for such telephone service at a rate of $18.00 per year or $1.50 per month, and is threatening to, and will remove phones from the residences of plaintiff and others, and will refuse them telephone service altogether, unless they will pay at the rate of $1.50 per month for each phone, and will deprive them entirely of telephone service, although they are willing and have offered to pay therefor, one dollar per month as provided by said ordinance. It is also alleged that the said company is discriminating between plaintiff and others and against plaintiff by charging others only $12 per year and refusing such rate to plaintiffs to their great damage. The prayer is that said company be enjoined from discontinuing telephone service, from removing said phones from plaintiffs' residences and from charging more than twelve dollars per phone, per annum.

The city of Findlay, named as defendant, takes up the cudgel for the plaintiff, and has filed an answer and cross-petition adopting all and singular the averments of the petition as true, and then proceeds with particularity to show that the said telephone company was organized for the purpose of constructing and operating a telephone exchange for the city of Findlay; that it made application to the city for a franchise for that purpose and by its agents prepared and presented to the city council

the ordinance which was later passed, and procured its passage, granting to the said company the right to construct such exchange by setting poles and stringing wires and occupying the streets and public places of the city for the purpose of building and equipping such exchange, that it was expressly agreed by said company, as a condition of the passage of said ordinance, that the price for residence telephone service for regular patrons residing in the city, should not exceed $12.00 per year, and such stipulation and agreement was by said company incorporated into and made section 3 of said ordinance, that said ordinance was accepted and all its terms agreed to, by said company, and the said exchange was constructed with especial reference to said ordinance and agreement as to rate of charges; and all this under such circumstances of inducement as estops the said telephone company to deny or refuse to perform its contract; that contrary to and in violation of said ordinance and agreement the said company is charging many of its patrons $18 per year and has removed phones from the residences of many patrons, residents of said city, for refusal to pay said rate, and are thereby depriving many residents of said city of residence telephone service, on the sole ground that they decline to pay therefor more than $12 per year. The city prays an order that the telephone company specifically perform its contract, and also injunction as prayed by the plaintiff.

The telephone company makes answer to the petition of plaintiff and the cross-petition of the city of Findlay, admitting many things alleged, and denying many others. It also makes some statements of fact in avoidance, or rather defensive to the statements made against it, all of which are put in issue by a reply. The company especially denies that it has or proposes to discriminate against any member of the public in favor of any other member, in the rate of charges for its telephone service; denies that it has threatened or is now threatening to refuse to perform and fulfil any or all of its contracts with individuals, firms or corporations for telephone service, and asserts the contrary; denies that it accepted the provisions of the ordinance as to the rates for telephone service fixed therein, especially as to the rate of $12 per annum fixed for residence telephone service; avers that said rate is unfair, unjust and unreasonably low, and that such service cannot be supplied at said rate without loss to the company; avers that the said city has, and had, no right or power to fix the price the defendant company may demand and receive for its telephone service in said city; denies that it made any contract or agreement with the city, or with patrons and residents of the city, for the supplying of telephone service at $12 per annum that it has not and will not fully perform, and denies all claim of estoppel.

Macklin v. Telephone Co.

The conceded and established facts, as developed on trial, are substantially as follows: The company was incorporated and organized for the sole purpose of constructing and operating a telephone exchange in the city of Findlay. It applied to the proper city authorities for leave to occupy the public places, streets, etc., of the city for the purposes of its plant, and requested an agreement fixing the manner of use of said streets and public places. The council, for a number of weeks, omitted to do this, defeating an ordinance for that purpose, by a two-thirds vote, on three different occasions, and until a provision fixing a maximum price for telephone service, to be charged by the said company, was incorporated into the ordinance, when it was passed into law and fixed the manner of use of the streets of the said city by the defendant telephone company. This last-named ordinance was prepared and presented to the city council by an agent or agents of the telephone company, and its enactment urged by such agents; and under the provisions of that ordinance the said telephone exchange was constructed and the streets, alleys and public places of the city occupied and used by the company. Some two hundred contracts for residence telephone service were made with residents, at the rate of $12 per annum, as fixed by the said ordinance.

After all this the said telephone company determined not to construct a plant as originally intended, and made a change in its plans and in its system, necessitating a greatly increased expense in construction and in operating, and determined not to build a plant at all unless it could procure not less than 800 contracts of patrons for residence telephone service at a rate of not less than $18 per annum, per phone. The determination not to construct a plant, except upon the conditions named, was published throughout the city and the result was that some 800 residents of the city entered into contracts with the company for residence phones at the rate of $18 per year, and the telephone plant was thereupon constructed in the mode, as to the occupancy of the streets and public ways, provided by the ordinance, with the improved and more expensive appliances last determined on by the company, and especially upon the consideration of the eight hundred contracts of resident patrons to pay $18 per year for residence phone service. The contracts for $12 per year, and as well the contracts at $18 per year, have been and are being carried out strictly. However, as fast as the $12 contracts expire by their own terms, and as to all new contracts for residence telephone service offered, the company declines to contract for or furnish such service at a less rate than $18 per year, or $1.50 per month.

The difference in the sum charged for residence telephone service on the two hundred $12 contracts and the eight hundred $18 contracts

constitutes the only discrimination between patrons that has been practiced by the defendant company.

The facts appearing would seem to relieve the defendant telephone company from the charge of willful wrongdoing and contemplated and threatened wrongdoing to the damage of the plaintiffs and the city of Findlay, contained in the petition and the cross-petition of the city; unless the provisions of the ordinance settling the manner of use of the public ways of the city, which fixes a price for residence telephone service at not more than $12 per year, was authorized by law and was, therefore, the proper and valid exercise of power by the city council; or, unless the said provisions fixing the maximum rate of charge for such service at $12 per year was procured by the defendant company under such circumstances and upon such considerations as make it a valid and enforceable contract between the city and telephone company which the company is estopped to deny.

As to the first proposition—The power of a municipality to fix the price of telephone service :

The franchise or right of a telegraph or telephone company to occupy the public streets and alleys of a municipality and use the same for the purposes of "constructing lines from point to point, by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires," is derived directly from the sovereign state by legislative grant contained in Sec. 3454 Rev. Stat., *et seq.*, to be found in Title 2, Chap. 4, under heading, "Magnetic Telegraph Companies." This right of use is absolute and subject only to the easement or right of the public to use the same public ways for public purposes, and the mode or manner of use by the company must be agreed upon between the municipal authorities and the company, and failing, that "the probate court shall direct in what mode a line shall be constructed along such street, alley, or public way, so as not to incommode the public in the use of the same," etc. See Sec. 3461 Rev. Stat. The right of use of the streets and public ways by the telephone company is wholly beside and independent of the municipality, and, of course, is to be enjoyed like any other right, without let or hindrance from the municipality, except in the proper exercise of its police power and the efficient discharge of the duty imposed upon it by the provisions of Sec. 2640 Rev. Stat., to "keep the streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation open and in repair, and free from nuisance." Power to discharge the duty imposed by Sec. 2640 Rev. Stat., in connection with the construction of a telegraph or telephone plant is given by Sec. 3461 Rev. Stat., and is expressly limited to an agreement fixing the mode of use of the streets and public ways; and it would seem that

the city's whole duty, in connection with the building of a telephone plant, is performed and its power in that behalf is exhausted, when it allows the company to use and occupy the public ways of the city with its "posts, piers and abutments" and other necessary appliances in the construction of its plant, in a mode of use agreed upon between the city and such company. No further or additional power is expressly given the council in this connection; nor do we think other power is clearly implied or in any sense necessary to the proper exercise of the power of police or the duty to keep the streets open in repair and free from nuisance. There appears to be nothing in the constitution or the laws made in pursuance thereof that confers upon the council of the city power to fix the price of telephone service in the city of Findlay. We think the city, under the law of this state, has no more right or power to set a price on telephone service than it has to regulate and fix the price of dry goods, groceries or other commodities in the same city. Perhaps the legislature of Ohio might confer such power on a municipality, but it has not done so, and the city is destitute of power in that respect.

The views and conclusions here indicated are supported and enforced by a number of decisions of courts of last resort, in several states, where, as in this state, the right of occupancy and use of the public ways of a municipality is conferred directly by legislative grant, aside from and independent of the municipality. Notably so in Wisconsin. State v. Sheboygan, 86 N. W. Rep. 657 (111 Wis. 23); Marshfield v. Telephone Co., 78 N. W. Rep. 735 (102 Wis. 604).

The remaining question, Did the defendant company enter into a contract with the city, providing for residence telephone service within the city, at a rate of $12 per year, under such circumstances and upon considerations that makes it a valid enforceable contract, estopping the company to deny or avoid it, is one of more difficulty.

There is a line of cases, and they are not at all uncommon, in which it is held, and no doubt correctly, on the facts and conditions present, that where a municipality, by ordinance duly enacted, has granted to a telegraph or telephone company the right to occupy and use its streets and public ways and has fixed and settled the manner of such occupancy and use, and the privileges thereunder granted are accepted by the company and acted upon, the grant and acceptance becomes a binding contract between such company and the municipality, the obligations of which cannot be avoided or impaired. Kansas City v. Corrigan, 86 Mo. 67; People v. Telephone Co., 61 N. E. Rep. 428 [192 Ill. 307]; Allegheny v. Railway Co., 28 Atl. Rep. 202 [159 Pa. St. 411]; Mutual Union Tel. Co. v. Chicago, 16 Fed. Rep. 309, and others. These holdings, however, are in cases and under state laws, where the sovereign

powers of the state have, in a large sense, been delegated to municipalities, granting them general power over and almost absolute control of their streets, alleys and public ways; and the adjudications are, therefore, not even of persuasive authority in this state, but are rather to be regarded as a fairly strong argument to the contrary. In the cases last named, the municipality, by virtue of delegated powers and legislative grant of general control over its streets, had something to confer—the right to use its streets, which would answer as a consideration for an agreement of the company to give telephone service at a stipulated price. As is said in one case:

"In such cases the municipal corporation is to be regarded as a subordinate agency of government for the administration of local affairs, which the legislature, in its discretion, has invested with the powers and prerogatives necessary to a complete government of its own affairs."

In such case the rights obtained from such municipality, by a telegraph or telephone company, would be very valuable and would likely be a good consideration for any reasonable promise or agreement, as to rates to be charged for telephone or telegraph service, or in other regards, that such company might make. Not so, however, in this state, or in any state where the right of use of the public ways is given directly to the company from the sovereign by express legislative grant, and there is only given to the municipality the power of police and the right to agree upon and fix the manner of such use, which right is not exclusive, but is shared by the probate court, and is only in furtherance of the municipality's plain duty, to keep the public ways " open in repair and free from nuisance." Neither the police power nor the right to fix the manner of use, is the subject-matter of barter, and both must be exercised exclusively in the interests of the public, for the public good and public welfare, and not for public gain, and most certainly not for such financial advantage as might arise and inure to only a small portion of the public. So, if we are correct thus far, it would seem to follow, that, in Ohio, a municipality has no valuable right to confer on a telephone company; nothing, in fact, that the law would regard as a consideration either valuable or good, to support a contract between the telephone company and the city, fixing a rate of charge for telephone service, and if the rate stipulated is to be sustained and enforced, it must be upon considerations, other than the conferring of a valuable right upon the telephone company to occupy and use the streets and alleys of the city; and upon some theory or doctrine of estoppel rather than contract.

It is likely if the defendant telephone company, by indirection and deceit, acquired some valuable concessions, not belonging to it as matter of right, the city authorities being misled and induced to grant such con-

Macklin v. Telephone Co.

cessions by the company's agreement and promise to give telephone service at the low rate of $12 per year, such promise and agreement, might, with propriety, be enforced on the ground that the telephone company having profited by its wrong, is estopped to deny the wrong, or omit to perform the promise by which it secured a benefit to itself.

If such condition and promise is made apparent from the facts adduced the court will not be reluctant or slow in enforcing the agreement or in requiring full performance of the promise; for it is not believed to be good policy for the courts to decline to take notice in such case and thereby allow a wrongdoer to realize a profit from wrongdoing. But in this case, from a careful examination and analysis of the facts appearing, we are compelled to the conclusion that the claim of deception and misleading of the city authorities to its injury and to the benefit of the telephone company is not well founded, and that there is scarcely an element of equitable estoppel, or estoppel by conduct, suggested by any evidence to which our attention has been directed, but somewhat to the contrary.

If, as we have seen, the telephone company had the right to use the streets, alleys and public places of the city direct from the state, and independent from the city, then, on request of the company, it become the duty of the city, in the interests of the public and the requirements of Sec. 2640 Rev. Stat., "to keep the streets open and free of nuisance;" to promptly settle and fix the manner of such use. The city authorities did not do this promptly, or at all, until induced thereto by the telephone company by artifice. The city council procrastinated and delayed the matter unreasonably. An ordinance defining and fixing the manner of use, but without a provision fixing a rate of charges for residence telephone service, was defeated with emphasis, on three different occasions, causing a delay of several months. In this situation, and being unable to agree on the manner of use, the telephone company could have taken the matter into the probate court and had the method of use fixed there, and thus got away from the council entirely. It, however, did not see proper to do this; but instead, adopted and resorted to a different scheme or device. It prepared an ordinance not only fixing the mode or manner of use, but also fixing a rate of charge for telephone service for residences of $12 per year, and procured its passage by the council into a law. The conduct of the company's representatives in the transaction was such as to leave the impression that they were willing to mislead the council, and so accomplish their purpose by indirection. The company does not appear to be altogether innocent and artless in the matter, and its attitude and conduct is not to be commended or approved; neither is it to be utterly condemned as wholly indefensible. I

suppose, on occasion, innocent artifice may, to an extent, be indulged in, if the only purpose is to procure from an official body the prompt discharge of a palpably plain duty, and there is no ulterior motive involved and no misleading of such body to the loss or injury of the public or to the undue benefit of the party employing such artifice. In such case the results being good may be availed of, while we must deplore the means by which the results were obtained. In this case it was to the interest of the public that the council fix the mode of use of the streets, by the defendant telephone company, in such way as to least encumber and obstruct the free use thereof by the public; and it was the duty of the council to so fix the mode of use without recompense or subsidy, and a proper discharge of that duty seems to be all that was accomplished by the telephone company's ruse.

The provisions of the ordinance were not formally accepted by the company even as to the manner of use, although in that respect the provisions were in fact accepted; but as to the provision fixing a rate of charges that was never accepted or acted upon, but was distinctly repudiated. Indeed, in that regard, it is made to appear by the evidence that the defendant company retired from the conference and determined not to construct a telephone plant at all, unless allowed to charge a rate of $18 per year for residence telephone service, and unless it could secure at least 800 contracts at that rate. This determination was proclaimed throughout the city and was generally known to the people of the city, and must have been known to at least some of the city officials; and was acquiesced in and assented to. Eight hundred contracts for yearly service at $18 per year were obtained from citizens, whereupon the construction of a plant was proceeded with and not before. This fact makes in favor of the telephone company and relieves it, in some measure, from the opprobrium, if any there was, attaching to its conduct in connection with the passage of the ordinance fixing the mode of use and a rate of $12 per year.

So, upon a consideration of the whole case, and inasmuch as neither plaintiffs nor the city parted with anything of value; and were not induced to place themselves in a position involving loss or expense to relieve the situation, and the defendant company did not secure more than its legal rights, we do not perceive any elements of estoppel, either equitable or by contract, in the case, and so conclude there is no merit in the contention of the plaintiffs or the city of Findlay, and the petition and cross-petition are dismissed at costs to the plaintiffs and the city.

Judgment may be entered in accordance with the views herein indicated.

**MOONEY and NORRIS, JJ.,** concur.