# CASES DETERMINED

AT THE

# August Term, 1905.

WISCONSIN TELEPHONE COMPANY, Appellant, vs. CITY OF MILWAUKEE, Respondent.

*October 3—October 24, 1905.*

*Telephone companies: Licensing: Municipal corporations: Ordinances: Validity: Revenue measure or police regulation?*

1. A municipal corporation has no power to exact a license fee from a telephone company for the privilege of constructing, maintaining, or operating its telephone lines upon the streets, that right having been specifically conferred upon such companies by the legislature, subject only to certain conditions and to reasonable regulation by the municipality.

2. The power to determine what occupations shall be licensed rests in the state; and a municipal corporation to which has not been delegated the power to license telephone companies cannot exact a license fee from such a company as a means of raising revenue.

3. Whether or not, as a police regulation, a city has power to exact a fee from a telephone company for inspection and supervision of its poles in the streets, is not decided; but in any case the city will not be permitted, under the guise of such power, to collect large amounts of revenue for the benefit of the city, regardless of the necessary expense of such inspection and supervision.

4. Where the power to license exists, a reasonable discretion is vested in the municipality, but courts will look into ordinances for the purpose of determining whether or not they were passed for purposes of revenue, although they are sought to be upheld as police regulations.

5. An ordinance of the city of Milwaukee, requiring telephone and telegraph companies to apply annually for a license to maintain, for the ensuing year, the poles and cross-arms then erected, and

to pay one dollar for each pole, including one cross-arm, and ten cents for each additional cross-arm; providing that all revenues so derived should become part of the general city fund; and imposing penalties for violation, the unlicensed erection or maintenance of any single pole or cross-arm being made to constitute a distinct and separate offense,—is *held* to be a revenue measure and not a mere police regulation.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

The appeal is from an order overruling plaintiff's demurrer to defendant's answer. The complaint alleges, in effect, the incorporation of defendant as a municipal corporation, the organization of plaintiff in 1882 under the statutes of Wisconsin then in force and the acts amendatory thereof, being re-enacted into sec. 1771, Stats. 1898, and that said plaintiff was so organized for the purpose of conducting a telephone business and maintaining telephone lines and exchanges, and in order to furnish lines of telephonic communication to the public throughout the state of Wisconsin and other states. That prior to the organization of plaintiff the legislature of the state of Wisconsin, in prescribing the powers of telephone corporations, enacted a law which was re-enacted by sec. 1778, Stats. 1898, which was held by this court, in *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 32, 21 N. W. 828, to apply to the plaintiff corporation, and that said statute applies to city streets and authorizes a Wisconsin telephone company, including plaintiff, to construct and maintain its telephone lines along the streets of Wisconsin cities without applying for or obtaining from any city any franchise, and that no such city has the power to add to or detract from such legislative grant, and that the police power vested in said city to regulate its streets can be exercised only in harmony with said franchise. That under said power conferred upon plaintiff it established in defendant city of *Milwaukee* a telephone exchange, which was a part of its system of telephone lines and exchanges throughout the state of Wisconsin,

and connected with other exchanges throughout the United States. That as a part of plaintiff's system, and necessary thereto, it has erected poles in defendant city along the streets and alleys thereof, and placed cross-arms, so called, thereon for the purpose of stringing wires, by means of which plaintiff is enabled to carry on its said business. That the poles within the limits of said defendant city number 6,900, and plaintiff intends to constantly increase said number as the demand requires, and that most of said poles bear cross-arms, ranging in number from one to eight. That plaintiff did not construct and operate, and is not maintaining and operating, its said system within said city pursuant to any grant of authority or permission by defendant city, but constructed, maintained, and operated, and continues so to do, its telephone system in said city by virtue of the authority conferred upon it by statute similar to and re-enacted in secs. 1771 and 1778, Stats. 1898, and without objection on the part of the defendant. That the poles and lines of plaintiff in said city are so located, constructed, and maintained as not to interfere with public travel, and in no way affect public safety or convenience, and that plaintiff has at all times complied with the requirements of law regarding the location, maintenance, and operation of its poles and lines, and that its system in said city is safe and convenient for public use. That its property is not assessed and taxed the same as the property of individuals, but by legislative enactment has been exempted from taxation, but required in lieu of taxation to pay a license fee prescribed by sec. 1222a, Stats. 1898. That it has at all times paid said license fee provided by law. That on February 9, 1904, defendant adopted an ordinance which was thereafter approved and published and which defendant claims has gone into force as a valid ordinance. The ordinance is entitled:

"An ordinance regulating the construction and maintenance of poles and their attachments in or upon any street, lane,

alley, sidewalk or city property within the limits of the city of *Milwaukee,* Wisconsin, for telegraph, telephone, electric light or other poles in said city, except poles owned by the municipality itself, and providing a penalty for the violation thereof."

Secs. 1 and 2 of said ordinance provide that such poles shall be designated by the name of such owners or lessees, and each pole shall have a distinct number not more than ten feet from the grade of the street, and that such poles shall be placed, replaced, erected, and maintained only at such points as shall be designated by the board of public works, and that such board shall keep in its office an accurate record of the location of each pole as designated and permitted by it, and that such board at least once a year shall cause a thorough count, inspection, and record of the poles and cross-arms, and, if any shall be found defective, unsuitable, or unsound, it shall notify the owners or lessees to forthwith replace the same, and it shall be the duty of such owners or lessees to replace such defective, unsuitable, or unsound pole or cross-arm within forty-eight hours. Secs. 3, 4, and 5 are as follows:

"Sec. 3. It shall be the duty of all such owners or lessees on or before the first Monday in June, A. D. 1904, and annually thereafter, to apply in writing to the city clerk for a license to maintain for the ensuing year the poles and cross-arms then erected, specifying the poles to be maintained by their designation, as provided for in this ordinance, together with the number of cross-arms thereon, and the city clerk shall issue such license to such applicant upon presentation of a receipt from the city treasurer acknowledging payment to him, for the use of the city of *Milwaukee,* of one dollar for each and every pole authorized to be maintained thereby, including one cross-arm, if any, thereon, and ten cents for each additional cross-arm. Said license shall authorize the maintenance of the poles and cross-arms designated in such applications only, for the period of one year, to be computed from

the first Monday in June of each and every year and no longer.

"Sec. 4. All revenues derived from licenses under this ordinance shall be credited to and become part of the general city fund.

"Sec. 5. Any person, firm, company or corporation who shall violate any provisions of this ordinance, shall be subject to a penalty of one hundred dollars for each and every offense, to be sued for and recovered in the manner now provided by law for the recovery of like penalties; and the erection or maintenance of any single pole or cross-arm in violation of the provisions of this ordinance, shall constitute a distinct and separate offense thereunder."

That the charter of the city of *Milwaukee,* ch. 184, Laws of 1874, and acts amendatory thereof, confer certain powers upon defendant respecting regulation of the streets in said defendant city, but that said streets belong to the public under the constitution and laws of the state of Wisconsin. That the state has granted, by act of the legislature, to plaintiff the franchise and right to use such streets under sec. 1778, Stats. 1898, and that said defendant has no police control over its streets except the police control granted by the provisions of its charter. That the police power granted to defendant by its charter confers no authority to pass and enforce the ordinance. That the exaction of the license fee in said ordinance is not authorized by law nor by the provisions of ch. 184, Laws of 1874, and acts amendatory thereof. That said ordinance is void as being in contravention of the constitution of the United States and of the constitution of the state of Wisconsin. That said license fee specified in said ordinance is a tax, and that said ordinance was not passed with a view of regulating plaintiff's business or property, but for revenue purposes only, and that said license fee is arbitrary and unreasonable in amount. The complaint further alleges that the defendant threatens to enforce the ordinance, which will cause a multiplicity of suits and irreparable injury to plaintiff, and

prays that defendant be enjoined and that the ordinance be
declared null and void.

The answer admits the material allegations of the com-
plaint, but denies that the poles are so located and maintained
as not to affect public safety, denies that the ordinance was
passed without authority of law, and that the exaction of the
license fee was not authorized, and that the ordinance was in-
valid or contravenes any provision of the federal or state con-
stitution, and denies that the license fee of one dollar a pole
is unreasonable.

Plaintiff demurred to the answer for want of facts suffi-
cient to constitute a defense.

For the appellant there was a brief by *Miller, Noyes &
Miller,* and oral argument by *Geo. P. Miller.*

For the respondent there was a brief by *Carl Runge,* city
attorney, and *Geo. E. Ballhorn,* assistant city attorney, and
oral argument by *Mr. Ballhorn.* They contended, *inter alia,*
that the city has power to license under its power of regula-
tion. Where the legislature has given a company a general
grant along the streets of a city, still the city, in the exercise
of its police powers, can supervise and control the erection and
maintenance of its poles; and it has been held that it may re-
quire a license for maintaining the poles upon the street.
*Monongahela v. Monongahela E. L. Co.* 12 Pa. Co. Ct. 529;
*Philadelphia v. W. U. Tel. Co.* 11 Phila. 327; *Western U.
Tel. Co. v. Philadelphia,* 22 W. N. C. 39; *Suburban L. & P.
Co. v. Boston,* 153 Mass. 200; *Lancaster v. Edison E. I. Co.*
8 Pa. Co. Ct. 178; *Southwark R. Co. v. Philadelphia,* 47 Pa.
St. 314, 321; *Branson v. Philadelphia,* 47 Pa. St. 329, 332;
*St. Louis v. W. U. Tel. Co.* 149 U. S. 465; *Western U.
Tel. Co. v. New Hope,* 187 U. S. 419; *Ash v. People,* 11
Mich. 347, 352; *Marmet v. State,* 45 Ohio St. 63, 77; *Phila-
delphia v. W. U. Tel. Co.* 40 Fed. 615; *State v. Long Branch
Comm'rs,* 42 N. J. Law, 364; *State v. Herod,* 29 Iowa, 123;
*In re Wan Yin,* 10 Sawy. 532; *Jacksonville v. Ledwith,* 26

Fla. 163; *Baker v. Cincinnati,* 11 Ohio St. 534; *Fayetteville v. Carter,* 52 Ark. 301; *Atlantic & Pac. Tel. Co. v. Philadelphia,* 190 U. S. 160; *Postal T. C. Co. v. Taylor,* 192 U. S. 64; *Taylor v. Postal T. C. Co.* 202 Pa. St. 583, 584; *Chester v. W. U. Tel. Co.* 154 Pa. St. 466; *St. Louis v. W. U. Tel. Co.* 148 U. S. 92; *S. C.* 149 U. S. 465. While appellant and its business are exempt by express statute from taxation, appellant is not exempt from the payment of such license fee as may be imposed by the municipality for the purpose of enforcing an ordinance intended as a police regulation. *Comm. v. Markham,* 7 Bush, 486; *State ex rel. Toi v. French,* 17 Mont. 54; *Fire Dept. v. Helfenstein,* 16 Wis. 136; *Carter v. Dow,* 16 Wis. 298; *Tenney v. Lenz,* 16 Wis. 566; *State ex rel. Henshall v. Ludington,* 33 Wis. 107; *Travelers' Ins. Co. v. Fricke,* 99 Wis. 367, 374; *Morrill v. State,* 38 Wis. 428, 435, 436; *Philadelphia v. American U. Tel. Co.* 167 Pa. St. 406; *Western U. Tel. Co. v. New Hope,* 187 U. S. 419; *Ex parte Gregory,* 20 Tex. App. 210.

KERWIN, J. The questions presented here upon the facts admitted by the demurrer are thus stated by respondent:

"First. Has the city authority to exact a license such as is provided for in the ordinance, the enforcement of which the appellant seeks to enjoin?

"Second. Does the ordinance in question contravene the fourteenth amendment of the federal constitution and similar provisions of the Wisconsin state constitution?"

The first proposition stated by counsel practically embraces the controversy before us, and we shall proceed to consider the right of the defendant city to exact the license fee. It is apparent from the argument of counsel for respondent, as well as from the authorities cited, that the ordinance is sought to be upheld under power of the defendant city to license the plaintiff and exact the license fee provided for in the ordinance. It is, however, contended that the license fee is not

exacted for any right or privilege conferred upon the plaintiff, but simply as a police regulation, and reference is made to the provisions of the city charter conferring power to prevent the incumbering of streets, lanes, and alleys, and giving the city the right to control and regulate the streets, alleys, and public grounds of said city, and under these provisions, as well as under the general police power, it is contended that the ordinance is in the nature of a police regulation. No power is conferred upon the defendant under its charter or by any law of this state to grant to the plaintiff the privilege of constructing, maintaining, or operating its telephone lines upon the streets of defendant city. This authority is specifically conferred by the legislature of this state, subject only to the provision that it shall not "obstruct or incommode the public use of any road, highway, bridge, stream or body of water." No authority is conferred upon the defendant to impose any other condition upon the plaintiff except such as it may lawfully impose under its power to control and regulate the streets, alleys, and public grounds and prevent the incumbering thereof, and its general police powers. Beyond this it has neither the right to confer any privilege upon the plaintiff in the use and occupation of streets, nor to impose conditions. *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657; *Marshfield v. Wis. Tel. Co.* 102 Wis. 604, 78 N. W. 735. It is very clear that the defendant had no power to exact a license fee from the plaintiff for the privilege of constructing, maintaining, or operating its telephone lines upon the streets of defendant city. *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 32, 21 N. W. 828. And it is conceded on the part of the respondent that the ordinance can only be sustained on the theory of a police regulation. It will be seen, however, that the cases cited by respondent are cases where the license fee was upheld upon the ground that the municipality had the right to grant some privilege to the company licensed, and for the granting of which a license fee

was sustained, or where the purpose of the ordinance was to regulate and not to license. Counsel for respondent frankly concedes that the city has no franchise to grant to the plaintiff and no power to confer under which the poles and wires may be maintained in streets, but contends that under the broad power of regulation conferred by the legislature and the police power it has the right to make and enforce reasonable regulations for the protection and safety of its citizens, and quotes at length from *W. U. Tel. Co. v. Philadelphia* (Pa.) 21 Am. & Eng. Corp. Cases, 40, 12 Atl. 144; but the case is not in point upon the proposition asserted, for the reason that the city of Philadelphia had the power to grant to the company the right to occupy the streets and impose upon the company such conditions and regulations as the municipal authorities might deem necessary, and the court said:

"That such is the relation of the city to the various companies which had been empowered to occupy its streets with a view to gain is to me abundantly clear, and they should not grudge a reasonable compensation for the space they occupy and the risks which she incurs on their account."

Counsel quotes from *C., M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118, to the effect that the charter of a corporation does not exempt it from police supervision and regulation, which is true as applied in that case; but the question here is not one of escape from police regulation, but whether the ordinance of the defendant is within it. *People ex rel. N. Y. E. L. Co. v. Squire,* 107 N. Y. 593, 14 N. E. 820, clearly involves a regulation under a statute of New York concerning such companies, and which provided for the removal of such wires and cables from the surface of the streets and laying the same under ground, and the court said (107 N. Y. 602, 14 N. E. 823):

"The claim that this law is void because it imposes a tax on the companies referred to cannot be maintained. The act of 1884 imposes the duty upon such companies to remove and

cause to be laid underground all such wires and cables as are required in their business, and there is no reason why such companies should not be subjected to the payment of all expenses incurred in the construction of works required to carry on their own business."

In *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72, 57 N. W. 970, the question involved under the ordinance was one of reasonable regulation. The ordinance provided for the location and use of electric wires in the streets, reasonable safeguards for the same, and a penalty for the violation of the regulation. No license fee whatever was exacted. It was purely a regulation requiring safeguards and providing a penalty for failure to furnish the same. *Marshfield v. Wis. Tel. Co.* 102 Wis. 604, 78 N. W. 735, involved the question of the city's right to control its streets and prohibit the incumbering of the same, and it was held that under this power the city had the right to prevent the incumbering by telephone poles certain of its streets, in the exercise of a reasonable discretion, and that the common council had a reasonable discretion in the location of such poles. The dominant purpose of the street being for public passage, any appropriation of it by legislative sanction to other objects must be deemed to be in subordination to this use. The decision only goes to the extent of authorizing a reasonable regulation on the part of the city. In *Baltimore v. Baltimore T. & G. Co.* 166 U. S. 673, 17 Sup. Ct. 696, it was held that the street railway company, occupying the streets by permission of the municipality, was subject to reasonable regulations by subsequent ordinances, and that the city did not exhaust its power of regulation by one exercise of it. In *Philadelphia v. W. U. Tel. Co.* 11 Phila. 327, the telegraph company commenced the construction of a new line on the streets, and the city sought to regulate such construction. Its right of regulation was sustained on the ground that the telegraph company was occupying the streets by permission of the city under the re-

striction that it should not use the streets of Philadelphia
without the consent of the mayor and city council first had
and obtained.   The cases generally cited by counsel for re-
spondent from Pennsylvania and from the supreme court of
the United States upon appeal from that state turn upon the
laws of that state, which authorize municipalities to grant
permission to such companies to occupy the streets and impose
such conditions and regulations as the municipal authorities
may deem necessary.   No such power is conferred upon mu-
nicipal corporations in Wisconsin.   *State ex rel. Wis. Tel.
Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657.   *Ash v. People,*
11 Mich. 347, upholds the right of the city of Detroit to pass
an ordinance prohibiting the keeping of stalls for the sale of
fresh meats outside of the public markets without license and
payment of license fee under its charter, which expressly em-
powered the common council to license and regulate butchers
and the keepers of shops and stalls.   *Marmet v. State,* 45 Ohio
St. 63, 12 N. E. 463, is a case where right to license is upheld
under express legislative authority given.   Also in *State v.
Herod,* 29 Iowa, 123, power was conferred upon the city to
license.   In St. Louis the title to the streets being in the city,
and the charter giving the right to license, tax, and regulate
telegraph companies, it was held that, the city having the
right to grant the use of the streets to telegraph companies, it
regulates the use when it prescribes the terms and conditions
upon which they shall be used.   The case turns upon the
power of the city to grant the right to use the streets to the
telegraph company.   *St. Louis v. W. U. Tel. Co.* 149 U. S.
465, 13 Sup. Ct. 990.

But we will not further extend discussion of cases cited by
respondent.   It is manifest they do not support the proposi-
tion that the defendant has authority to exact a license such
as is provided for in the ordinance in question.   The power
rests in the state to determine what occupations shall be
licensed.   *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 32, 21 N. W.

.828; *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657; Cooley, Const. Lim. (7th ed.) 884. And it is not claimed that any power had been granted to the defendant by the legislature to license the plaintiff, nor is it claimed that the plaintiff has failed to comply with all regulations respecting its use of the streets, or that it has violated the law granting it the right to occupy the streets by obstructing or in any manner interfering with the public use of the streets of defendant. And, no power having been delegated to defendant to license plaintiff, it could not exact a license fee as a means of raising revenue. *Wis. Tel: Co. v. Oshkosh, supra; State ex rel. Wis. Tel. Co. v. Sheboygan, supra; Marshfield v. Wis. Tel. Co.* 102 Wis. 604, 78 N. W. 735; *State ex rel. Wis. Tel. Co. v. Sheboygan,* 114 Wis. 505, 90 N. W. 441; *Mich. Tel. Co. v. Benton Harbor,* 121 Mich. 512, 80 N. W. 386. But it is claimed that the ordinance is a regulation and not a revenue measure, and that it may be sustained upon the theory that the defendant has the right to impose such fee for supervision and inspection under the police power. Whether the city has power to impose any fee upon the plaintiff for inspection and supervision is not necessary to decide, and we do not decide, in this case, because it is clear that the ordinance was passed for no such purpose, but, on the contrary, was an attempt to charge plaintiff for the privilege of maintaining its poles and wires in the streets. If the city had power to grant any privileges in the streets to the plaintiff, or had express authority from the legislature to license the plaintiff so as to bring its case within the authorities cited, the respondent's position would be quite different. But, as before observed, the defendant had no right or privilege to grant to the plaintiff, and no power to prevent its use of the streets in a reasonable manner consistent with the public use, and the provisions of the ordinance set out in the statement of facts show that it was a revenue measure and not a regulation.

The ordinance requires telephone and telegraph companies to apply annually for a license to maintain, for the ensuing year, the poles and cross-arms then erected, and provides for payment, for the use of the city, of one dollar for each and every pole authorized to be maintained thereby. The ordi-- nance further provides that all revenue derived from such license shall become part of the general city fund, and im-- poses a penalty for any violation, and further provides that the erection or maintenance of any single pole or cross-arm in violation of the provisions thereof shall constitute a distinct and separate offense thereunder. The plain import of this ordinance is that it grants the privilege to telephone and telegraph companies to occupy the streets of defendant city with their poles and cross-arms in consideration of the license· fee exacted. *Neuman v. State,* 76 Wis. 112, 45 N. W. 30 ; *Chilvers v. People,* 11 Mich. 43 ; *Home Ins. Co. v. Augusta,.* 50 Ga. 530. There is nothing in the ordinance. indicating that the fee is exacted for inspection or supervision, or that it will be used for such purpose, or that any such amount is· necessary to defray the expense of such inspection and supervision, and it is quite obvious that the aggregate amount· sought to be collected would be far beyond the reasonable ex-- pense of such inspection and supervision. We think it safe· to say that any reasonable cost of inspection and supervision would not exceed one tenth of the revenue chargeable according to the terms of the ordinance. True, where the power to· license exists, a reasonable discretion is vested in the municipality, but courts have a right to look into ordinances with a view of determining whether they are passed for the purpose· of revenue, although sought to be upheld as police regulations. Even if the city had the right to impose reasonable charges for· inspection and supervision, it should not be permitted under the guise of such power to collect large amounts of revenue for· the benefit of the city regardless of the amount necessary for such inspection and supervision. And where the court can

clearly see that revenue and not regulation is the aim and not the incident, and no power is given to license the occupation, the ordinance is void. *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 32, 21 N. W. 828; *Slate ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 40, 41, 86 N. W. 657; *Postal T. C. Co. v. Taylor,* 192 U. S. 64, 24 Sup. Ct. 208; *Mich. Tel. Co. v. Benton Harbor,* 121 Mich. 512, 80 N. W. 386; *Mayor, etc. v. Second Ave. R. Co.* 32 N. Y. 261; *Memphis v. Am. Exp. Co.* 102 Tenn. 336, 52 S. W. 172.

It follows from what has been said that the order must be reversed.

*By the Court.*—The order of the court below is reversed, and the cause remanded with instructions to sustain the demurrer.